UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT PENNSYLVANIA

| | |
|---|---|
| JONATHAN J. DiBELLO, for himself and for a class of similarly situated individuals,<br><br>    Plaintiff,<br><br>    v.,<br><br>ALPHA CENTURION SECURITY, INC.; JOANNA SMALL, PATRICK A. PANETTA & ALPHA CENTURY SECURITY, INC.<br><br>    Defendants. | Civil Action No.<br><br><br><br><br><br><br>PLAINTIFF DEMANDS<br>A TRIAL BY JURY |

### AMENDED COMPLAINT-CLASS ACTION

Jonathan J. DiBello files this amended complaint against Alpha Centurion Security, Inc., Joanna Small Patrick A. Panetta, and Alpha Century Security, Inc., for making illegal payday loans at interest rates in excess of 500% A.P.R. in violation of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), the Truth-in-Lending Act, 15 U.S.C. § 1600 *et seq.,* and the Pennsylvania Uniform Fraudulent Transfer Act ("UFTA"), 12 Pa.C.S. §§ 5101 *et seq et seq*. The plaintiff makes the following averments in support of this complaint:

1. Jonathan J. DiBello is a citizen of the Commonwealth of Pennsylvania residing at 3728 School Lane Apt. B3, Drexel Hill, Pennsylvania.

1

# Exhibit "A"

2. During all of the events discussed in this complaint, Mr. DiBello was a citizen and resident of Pennsylvania.

3. Alpha Centurion Security, Inc. ("Alpha"), was a corporation with a principal office for business at 200 West Chester Pike, Havertown, PA 19083. Exhibit P-1.

4. Alpha was in operation from about 1999 until November 21, 2014.

5. Alpha is a security company that supplies guards to private and governmental entities and is believed to employ one to two hundred people as security guards.

6. Joanna Small is the owner and chief executive of Alpha. Exhibit P-1.

7. Patrick A. Panetta is employed by Alpha as chief of operations. Exhibit P-1.

8. Ms. Small and Mr. Panetta have lived together in a domestic partnership for 28 years and appear to have an agreement as part of their domestic partnership to share each others' rights and interests in property. In all likelihood, Mr. Panetta and Ms. Small are in a common law marriage.

9. Federal jurisdiction over this complaint arises under 18 U.S.C. § 1964 (RICO), 15 U.S.C. § 1640 (Truth-in-Lending), 28 U.S.C. § 1331 (federal questions), and 28 U.S.C. § 1367 (supplemental jurisdiction). Venue is appropriate in the Eastern

District of Pennsylvania where the parties reside and all of the acts alleged in the complaint occurred.

10. Beginning on or about December 2006 until approximately November, 2012, Johnathan DiBello was employed by Alpha, first as a security guard and then later as a field supervisor.

11. Mr. DiBello's wages ranged from $8.50 an hour to $8.75 an hour.

12. The terms and conditions of Mr. DiBello's employment were specified in the Alpha Employee Handbook. The 2010 version of the handbook is attached as Exhibit P-2.

13. As explained in the handbook, Alpha's practice was to pay its employees every two weeks on Monday. Handbook at 12-13.

14. Alpha had an express policy stated in the handbook of allowing employees to obtain payment advances on their wages. Handbook at 13.

15. For each pay advance, Alpha charged a 20% finance charge. Handbook at 13.

16. For example, an employee who took an advance of $200 would have to pay a finance charge of $40. See Exhibit P-3.

17. At the end of the pay period, Alpha would deduct the advance and the finance charge from the employees' pay, so the employee who took a $200 advance would see a $240 deduction from his or her pay.

18. On an annualized basis, the 20% finance charge equates to an interest rate of 1,042.85% A.P.R. on a seven day loan or 521.42% A.P.R. on a fourteen day loan. Exhibit P-4.

19. Mr. DiBello took pay advances on a regular basis, and in each instance paid the 20% finance charge to Alpha.

20. Mr. DiBello believes that many other employees also took pay advances.

21. For each pay advance, Alpha deducted the amount of the advance plus the 20% finance charge from Mr. DiBello's pay check. See Exhibit P-5.

22. Over the period of a year, provided Mr. DiBello took a $200 advance each pay period, Mr. DiBello would have paid an aggregate finance charge to Alpha of $1,040, nearly all of which would be usurious interest.

23. Mr. DiBello initiated this lawsuit on September 4, 2013, by filing a complaint.

24. On or about November 21, 2014, while the case was pending, the defendants incorporated a new business called Alpha *Century* Security, Inc. ("Alpha Century"). Exhibit P-6 (Unless the context indicate otherwise, reference to Alpha includes Alpha Century.)

25. Alpha Century acquired the accounts previously served by Alpha and continued providing security services to those accounts.

26. Alpha Century also hired all of the employees who had been in the service of Alpha, and those employees continued their role for Alpha Century.

27. Alpha ceased operations.

28. The stock for Alpha Century is purported to be owned by Mr. Panetta.

29. Ms. Small has retained an interest in the Alpha Century. Ms. Small is being paid $3,000 per month as a consultant, and she maintains an interest in Alpha Century by virtue of her domestic partnership or marriage with Mr. Panetta. Ms. Small has an interest in the stock because it is part of her marital estate with Mr. Panetta or because she and Mr. Panetta have an agreement as part of their lifelong domestic partnership to share each others' rights and interests in property.

30. Alpha Century has a new address up the street from its old address and a new phone number, but callers to Alpha are told that the number has been "changed" and given the new number.

31. Plaintiff avers that Alpha Century is liable for plaintiff's claims against Alpha under one or more theories of successor liability including (1) that the acquisition of Alpha's assets by Alpha Century is a defacto consolidation or merger, (2) Alpha Century is a mere continuation of Alpha, or (3) the transaction is

fraudulently entered into escape liability to creditors. *Com. v. Lavelle*, 555 A.2d 218, 226, 382 Pa.Super. 356, 373 (Pa. Super. 1989).

## Class Action Allegations

32. This case is eligible for class certification under F.R.C.P. 23(b)(3).

33. Questions of law or fact common to the class predominate over any questions affecting individual members.

34. The overarching issue is whether Alpha is liable to refund the 20% finance charge imposed on employees for taking pay advances. Questions common to the class include: (a). Whether the pay advance fee is usurious interest, (b). whether liability arises under RICO for the collection of unlawful debt, (c). whether Alpha is liable for failing to make material disclosures under the Truth-in-Lending Act, and (d). whether Alpha is liable under the Pennsylvania Wage Payment and Collection Law for failing to pay employees their full wages.

35. The parties' claims and defenses with respect to the issues stated in paragraph 25 will be the same for all employees. Resolution of these issues will determine the defendants' liability to the class and predominate over any and all potential individual issues.

36. If the defendants are found liable on plaintiff's claims, damages will be determined for the class based on a uniform standard, reimbursement of the

20% pay advance fee plus statutory and treble damages, less lawful interest calculate at the rate of 6% per annum.

37. Plaintiff proposes to represent a class consisting of all present and former employees of Alpha who took pay advances within four years prior to the filing of this case to the present. There would be a subclass under the Pennsylvania Wage Payment and Collection Law of all present and former employees who took pay advances from Alpha starting three years prior to the filing of the case to the present and another subclass under the Truth-In-Lending Act for all present and former employees who took pay advances within one year of the filing of the case.

38. Alpha is believed to regularly employee between one hundred to two hundred people, many of whom have taken pay advances. If half of the present employees took just one pay advance the class would consist of fifty to one hundred people who are owed refunds, and the inclusion of former employees will make the class larger.

39. A class action is a superior means to fairly and efficiently adjudicate this dispute. Without a class action it is unlikely anyone would ever obtain a recovery.

40. The defendants have made usurious payday advances for years, and so far no employee has ever brought an individual action to recover usurious interest.

41. The recovery in an individual action is likely to be so small it would not justify bringing a case.

42. In the absence of a class action, the defendants will be able to retain funds wrongfully withheld from employees' wages without having to refund it and will likely continue an unlawful lending practice into the future.

43. Since the class is small, the case will be easy to manage.

44. Mr. DiBello's claims are typical of the class, and thus he will be an adequate class representative. Moreover, since Mr. DiBello is no longer an Alpha employee, he has no concern for retaliation and will be able to vigorously represent all of Alpha's current and former employees without a conflict of interest.

45. Plaintiff's counsel has over 20 years legal practice experience and is fully able to manage a small class action.

## Count I

46. This count is against Ms. Small and Mr. Panetta for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), for using Alpha to collect unlawful debt. All of the preceding paragraphs are incorporated by reference.

47. Ms. Small and Mr. Panetta are persons within the meaning of section 1962(c).

48. Alpha is an enterprise within the meaning of section 1962(c). *Cedric Kushner Promotions, LTD., v. Don King,* 533 U.S. 158 (2001).

49. Ms. Small and Mr. Panetta are employed by or associated with Alpha; specifically they each work at Alpha as the president and chief operations officer, respectively, and it is believed they both have an equity interest in the business.

50. Alpha is engaged in interstate commerce and its activities affect interstate commerce. Specifically, Alpha has accounts in which it supplies security guards to locations in New Jersey and Delaware.

51. Alpha also uses instrumentalities of interstate commerce in its daily activities, including automobiles, telephones, the internet, and the mails.

52. Alpha purchases good, supplies, and services from out-of-state suppliers. For instance, Alpha uses Paychex, Inc., headquartered in Rochester, New York, to process its payroll. See Exhibit P-5.

53. Alpha may employee people who reside out-of-state.

54. Alpha employees spend a portion of their salaries on goods and services from out-of-state.

55. Ms. Small and Mr. Panetta conduct the affairs of Alpha or participate in the affairs of Alpha through the collection of unlawful debt in violation of 18 U.S.C. § 1962(c).

56. Specifically, Ms. Small and Mr. Panetta directed Alpha to make and collect pay advances to and from its employees at a rate of interest far in excess of the legal rate of interest in Pennsylvania.

57. Over the course of Mr. DiBello's employment, Alpha made a series of pay advances to him and for each such advance, Alpha withheld a 20% fee in addition to the amount of the advance. See Exhibit P-5.

58. The 20% advance fee constitutes unlawful debt within the meaning of section 1962(c) as the term is defined in section 1961(6).

(a). Specifically, a substantial portion of the advance fee is unenforceable under state usury law. Under Pennsylvania law, an unlicensed lender is prohibited from charging a rate greater than 6% per annum as compensation for the use of money. 41 P.S. § 201 *et seq.*

(b). Alpha makes pay advances as part of its business. Alpha's practice of making usurious pay advances to employees is memorialized in its employee handbook. Exhibit P-2 at 13. Alpha uses the advances as a scheme to pay employees less wages than are lawfully due.

(c). The advances are issued at a rate far in excess of twice the enforceable interest rate allowed in Pennsylvania. 18 U.S.C. § 1961(6).

59. Mr. DiBello and the class were damaged by Alpha withholding illegal and usurious finance charges from their pay checks. It is money the employees deserved to be paid as compensation for their employment.

WHEREFORE, Mr. DiBello requests relief as follows against Ms. Small and Mr. Panetta for himself and the class:

(a). An award of damages equivalent to three times the amount of unlawful debt withheld from their pay;

(b). An award of attorney's fees and costs;

(c). Any other relief that is just and appropriate.

## Count II

60. This count is against Alpha for violating the Truth-In-Lending Act ("TILA"), 15 U.S.C. § 1600 *et seq.* All of the preceding paragraphs are incorporated by reference.

61. Alpha's pay advances constitute "credit" within the meaning of TILA. 15 U.S.C. § 1602(f). The pay advance is a right to incur debt and defer its payment.

62. The plaintiff and proposed class members are "consumers" within the meaning of TILA. 15 U.S.C. § 1602(i).

11

63. The plaintiff is a natural person, and the pay advance funds are primarily for personal, family or household purposes, *i.e.*, the funds represent plaintiff's wages.

64. Alpha is a creditor within the meaning of TILA. 15 U.S.C. § 1602(g).

65. Alpha regularly extends consumer credit which is payable by agreement for which the payment of a finance charge is required and is the person to whom the debt is initially payable.

66. Alpha failed entirely to comply with any of the disclosure requirements applicable to consumer credit transactions under TILA.

67. Alpha failed to provide material disclosures for pay advance transactions, including the annual percentage rate, finance charge, amount financed, or total payments.

68. Consequently, Alpha charged the plaintiff and class triple digit interest rates in excess of 500% A.P.R. on pay advances without stating the actual interest rate.

WHEREFORE, Mr. DiBello requests relief against Alpha and Alpha follows for himself and the class:

(a). An award of actual and statutory damages;

(b). An award of attorney's fees and costs; and

(c).   Any other relief that is just and appropriate.

## Count III

69.   This count is against all of the defendants for violating the Pennsylvania Uniform Fraudulent Transfer Act ("UFTA"), 12 Pa.C.S. §§ 5101 *et seq*. All of the preceding paragraphs are incorporated by reference.

70.   Mr. Dibello is a creditor of Alpha within the meaning of the UFTA because he holds a claim against Alpha as defined in section 5101 of the UFTA.   12 Pa.C.S. §§ 5101.

71.   Alpha is a debtor within the meaning of the UFTA because it is liable on Mr. DiBello's claim. 12 Pa.C.S. §§ 5101.

72.   By November, 2014, Alpha had several large judgments against it and was subject to the present lawsuit.  Alpha was likely insolvent.

73.   In response to these circumstances, defendants Small and Panetta created a new corporation, Alpha Century, and transferred Alpha's entire business to Alpha Century.

74.   The transferred assets included all of Alpha's customers, accounts, good will, employees, vehicles, office equipment, communications equipment and everything else Alpha Century needed to continue providing security services to Alpha's former customers.  All of these assets were now owned by or under the use and control of Alpha Century.

75. Defendants took these actions for the purpose of deriving income from Alpha's assets free and clear of the claims of Alpha's creditors, including Mr. DiBello.

76. Alpha Century was formed and the assets transferred with the actual intent to hinder, delay and defraud creditors, including Mr. DiBello and the class members he is seeking to represent.

WHEREFORE, Mr. DiBello requests relief as follows against Alpha Century for himself and the class:

(a). Enter judgment against Alpha Century for all relief plaintiff originally sought against Alpha;

(b). Enjoin the defendants from making any transfers of assets outside the ordinary course of business; and

(c). Grant plaintiff any other relief that is just and appropriate.

Respectfully submitted,

_____
Robert F. Salvin (RFS2522)
Two Bala Plaza, Suite 300
Bala Cynwyd, PA  19004
215-300-2388
215-271-2820 (fax)
rfsalvin@hotmail.com